Harold Baer, J.
This is an action by a widow and beneficiary to collect the proceeds of her husband’s life insurance policy. At the time the policy was purchased by the insured, he resided in Northport, Long Island, but in the summer of 1965 moved to 1160 Fifth Avenue, New York City. The premiums for the policy in question were payable monthly, but not billed monthly to the insured. Instead the company provided him with 12 IBM cards annually, together with return envelopes to be used each nfonth for the payment of premiums. Payments for the months of September, October, November and December of 1965 were not made. On February 12, 1966, the insured sent his check *963 in the amount of $199.85 to the defendant, which check was deposited by the defendant. A receipt for this payment was made out by Joe Dee, an agent for the defendant. Mr. Dee was the person with whom the insured dealt concerning all of his insurance matters, including other types of insurance policies which he purchased from the defendant.
On February 14, 1966, the insured flew to Peru on a business trip. At the end of April, 1966, while the insured was still in Peru, the plaintiff received a check from the defendant in the amount of $199.85 with no explanatory letter. She testified at the trial that she then called Mr. Dee to ask what it meant but that he did not know. She further testified that Dee called back and said: ‘ ‘ Nothing to worry about, everything is alright.5 ’
On May 2, 1966 plaintiff received word that the insured was hospitalized and was in a coma. On May 4, 1966 she flew to Peru. On May 14, 1966 the insured died. Upon plaintiff’s return to New York on May 18, 1966, she found a letter dated May 4, 1966 from Dee asking that an enclosed reinstatement form be filled out. An oral claim was made in response to which claim forms were forwarded by defendant to plaintiff. After proof of claim was filed with defendant, it sent to plaintiff or her attorney a check for $100, which represented the amount of paid-up insurance which it claims was in effect at the time of death. This check was not deposited.
Defendant contends that due notice of lapse of coverage was mailed to the insured and that in view of insured’s failure to comply with the contractual requirements for reinstatement, the policy was not in effect at the time of death.
Plaintiff’s contention is that the defendant did not send the required notices and further that defendant is estopped from claiming forfeiture of the policy by its retention of the premium and its subsequent silence for a period of two and one-half months.
The insured had a contractual right to reinstatement of the policy upon (a) evidence of insurability and (b) payment of all overdue premiums. It was for the purpose of exercising this right that he sent defendant his check in the amount of $199.85 representing overdue premiums. Defendant deposited the check and issued its receipt therefor, and admittedly took no other action for a period of two and one-half months. It was only after this protracted period of time that a form (not requiring a medical examination) was sent to the insured. It has been recognized in this jurisdiction that an insurer has an obligation to act promptly on an application for reinstatement of a life insurance policy which has lapsed due to nonpayment *964 of premiums. This is particularly true where the insurer has . accepted payment of premiums (Steiner v. Equitable Life Assur. Soc., 146 Misc. 292), issued an unconditional receipt and where no fraud was involved (see Osterhoudt v. Prudential Ins. Co., 136 App. Div. 123). The courts do not favor forfeitures and will not permit an insurer to interpose such defense where forfeiture was brought about by the conduct of the insurer (Divita v. New York Life Ins. Co., 244 App. Div. 498). Where the right of reinstatement is given subject to certain conditions, it is the insurer’s duty to pass upon the application with reasonable promptness and diligence under all the circumstances. The insurer’s delay will estop it from denying that the policy was revived (3A Appleman, Insurance Law and Practice, § 1974, pp. 415-417; 30 N. Y. Jur., Insurance, § 716, p. 65).
In the case at bar, the insured did everything he could reasonably have done, to preserve his policy. He was lulled into a false sense of security by defendant’s silence and when it finally acted two and one-half months later (after its employee had assured plaintiff that all was well), it sent only a simple form for the insured to fill out and sign. There is no evidence to show that defendant would not have reinstated the insurance had the form, which required no medical or physical examination, been completed. Nothing has been shown to indicate that the defendant questioned the risk or was desirous of eliminating it. The failure to perform the almost ministerial function of the filing of the form is all that the insurer can point to in denying reinstatement of this policy.
It is a question of fact whether the insurer by its acts or conduct or that of its representatives, waived a forfeiture which would otherwise result from the nonpayment of premiums (see 30 N. Y. Jur., Insurance, § 848, p. 203).
The court finds that the defendant is estopped from claiming lapse of coverage by its unreasonable conduct under the circumstances.
Furthermore, there has been a failure of proof on the part of defendant of compliance with section 151 of the Insurance Law, which required defendant to send a notice of nonforfeiture benefits within six months after default (Insurance Law, § 151, subd. 7).
The notices which defendant claims to have sent to the assured were not duly addressed as is required by section 151 of the Insurance Law. They were sent to an address from which the insured had moved some time before. There was ample evidence at the trial that the defendant knew of the change. Joe Dee, the resident agent employed by defendant, was so advised. *965 Other insurance policies with the same company were transferred to the new address and the defendant therefore had actual knowledge thereof. There was some evidence that the notices were, in fact, never mailed. Company records divulged copies of notices allegedly mailed to the insured. Mr. Dee testified in his examination before trial that he did not receive copies of the notices although it was defendant’s practice to send him copies. Where a notice is improperly addressed, there is no presumption that it was received by the insured in due course of mail (Phelan v. Northwestern Mut. Life Ins. Co., 113 N. Y. 147) and it is the burden of the insurer to show full compliance with notice provisions of the Insurance Law (Imbrey v. Prudential Ins. Co. of Amer., 286 N. Y. 434; Maloney v. John Hancock Mut. Life Ins. Co., 271 F. 2d 609 [C. A. N. Y.]). The court finds that defendant has failed to meet this burden.
With respect to defendant’s contention that this action is barred by the Statute of Limitations contained in subdivision 4 of section 151 of the Insurance Law, this statute is not applicable where the action is on a policy forfeiture or a waiver thereof (Thompson v. Postal Life Ins. Co., 226 N. Y. 363, 368).
Accordingly, judgment is awarded to plaintiff in the amount of $15,000, which is the face amount of the policy at issue, plus $7,760 which represents the family income benefit thereunder, or a total of $22,760 with interest from May 26, 1966, less nine months’ earned premiums.