(No. 46476.—

ALLEN B. KRAVIS, Adm'r, Appellee, v. SMITH MARINE INC., *et al.,*—(Melvin J. Cole, Appellant.)

*Opinion filed January 30, 1975.—Rehearing denied March 24, 1975.*

142

UNDERWOOD, C.J., and SCHAEFER, J., dissenting.

Frank J. Mackey, Jr., and Sidney Z. Karasik, of Chicago, for appellant.

Alexander Polikoff, of Chicago, for appellee.

Irwin J. Askow and Thomas P. Luning, both of Chicago, for *amicus curiae* Chicago Council of Lawyers.

Louis G. Davidson and John D. Hayes, both of Chicago, and Frederick W. Allen, of Peoria, for *amicus curiae* Illinois Trial Lawyers Association.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff, Allen B. Kravis, as the administrator of the estate of Doris L. Kravis, and as father and next friend of Mark Kravis, a minor, filed a personal injury and wrongful death action. In connection with the settlement of this action, plaintiff filed a motion pursuant to Rule 14.23(g) of the circuit court of Cook County, which provided that in the settlement of personal injury or wrongful death actions the judge who tries the case or presides at settlement negotiations shall determine the value of the legal services rendered. Plaintiff's motion sought a determination that attorney Lawrence Kotin was entitled to remuneration for the legal services rendered in the personal injury and wrongful death action, and that attorney Melvin Cole was not entitled to any remuneration. Following a hearing on the motion, the trial court entered a judgment in favor of Kotin and Cole, fixing a fee of 25% for all amounts recovered or to be recovered through negotiations. This fee could be increased to 33 1/3% in the event of unforeseen obstacles or trials which could result from litigation that was still pending. This fee was to be divided equally between the attorneys, as indicated by their agreement in this regard. The appellate court, in pertinent part, reversed and remanded, finding that Cole was entitled only to such compensation as he may assert on a *quantum meruit* basis, since he had breached his fiduciary responsibility to Kravis by not informing him of his "fee-splitting" agreements with Kotin and with a previous attorney. (*Kravis v. Smith Marine, Inc.*, 15 Ill. App. 3d 494.) We granted Cole's petition for leave to appeal.

Kravis's wife and four-year-old son were involved in a boating accident in August 1966. Mrs. Kravis died as a result of the accident, and the son was severely and permanently injured. Kravis either sought legal assistance from Cole, a family friend and a distant relative of Mrs. Kravis, or accepted Cole's offer of help. It would appear

that Cole initially performed many uncompensated services primarily involving probate matters on behalf of Kravis and his son.

Shortly after the accident, Cole suggested to Kravis that the personal injury suit would be difficult and that it would be advisable to retain an attorney who was a trial specialist. Cole and Kravis then considered five or six attorneys as possible candidates and selected John Kennelly. Cole met with Kennelly, who consented to take the case, and they agreed to divide whatever fee was received with Cole taking two thirds and Kennelly one third. A conference was held on October 1, 1966, among Cole, Kravis and Kennelly, at which Kravis retained Kennelly, though no written contract was signed. Kravis stated that he assumed Kennelly would charge whatever "would be proper."

Kennelly and Cole then proceeded with commencement of the personal injury and wrongful death action. A complaint was filed against six defendants as a result of the boating accident, and it was subsequently amended to include two additional defendants. Kennelly and Cole both signed the complaint and the amendment thereto as attorneys for Kravis.

In January 1968, Kennelly decided to withdraw from the case since he was becoming increasingly involved in aviation accident litigation and was limiting his practice. Cole attempted to induce Kennelly to remain in the case by offering an equal division of the fee, but Kennelly stated in a letter written to Cole that he would not consider remaining for less than two thirds of the fee. A personal meeting requested by Cole did not occur, and Kennelly formally withdrew in April 1968, requesting only reimbursement for his expenditures. Cole then recommended Lawrence Kotin as a replacement. Kotin had been approved by Kennelly. A motion for a substitution of attorneys was prepared by Cole and signed by Kravis, who said that he had "checked out" Kotin. Cole and Kravis met

with Kotin at his office and Kotin dictated the following contract which Kravis signed:

"CONTRACT

May 13, 1968

I hereby employ LAWRENCE L. KOTIN and MELVIN J. COLE as my attorneys to represent me in a claim for damages against persons responsible for injuries sustained by my son, MARK, a minor, and for the death of my wife, DORIS, in a motor boat accident which occurred on August 30, 1966 in a channel on the chain of lakes near Fox Lake in the State of Illinois. I agree to pay them the statutory fee, subject to the approval by the appropriate court, in connection with both claims and, in addition thereto, to reimburse my said attorneys for any and all costs incurred necessary to the prosecution and preparation of this said law suit or settlement.

Name *Allen B. Kravis*
Administrator and Individually
Address 8539 Springfield Ave.
Skokie, Illinois 60076

We, LAWRENCE L. KOTIN and MELVIN J. COLE, agree to render services for the said statutory fee and to make no charges if no recovery is made by way of suit or settlement.

*Lawrence L. Kotin"*

Kotin, who had previously agreed with Cole that they would divide equally any fees received, accepted responsibility for the case and did the majority of the work. He dealt more directly with Kravis than had Kennelly, but he did, at times, consult with Cole. Kotin signed and swore to pleadings that bore Cole's name and sometimes his signature as co-counsel. Additionally, Cole attended some discovery hearings and a pretrial conference.

In May 1970, a $100,000 recovery was received from one of the defendants in the personal injury case in exchange for a covenant not to sue. Kravis, who is an accountant, met with Kotin to approve the disbursement petition which contained the following entry:

"Lawrence L. Kotin and Melvin J. Cole, attorneys' fees

for legal services as to this settlement and distribution, 25% of $99,000 *** $24,750.00."

A few days after he had signed the petition, Kravis complained to Kotin of the payment to Cole. Kotin explained that Cole was to receive 50% of the fee. Kravis stated that he had never been told of this and asked how it could be changed. Kotin suggested that Kravis speak with Cole. Cole admitted he was to receive 50% of the fee and said that this was the customary procedure. Cole further admitted that his original arrangement with Kennelly would have allowed him to obtain two thirds of the fee. Kravis responded that had he known of either arrangement he would not have approved and would have retained an attorney on his own. Cole stated that the same total fee would have been charged by any attorney. Kravis refuted this, saying that he had learned many attorneys would have charged less if no forwarding fee were to be paid. Cole discounted the truth of this, but said that they would talk the matter over at a later time.

Following the disbursement order in June 1970, over which Kravis made no objections, Cole received $12,375. The following October Kravis called Cole, at which time Cole offered to limit his share of any further recoveries to 12½% regardless of whether they resulted from trials, but Kravis answered that Cole had already received more money than he was entitled to and that Cole had violated ethical legal standards in accepting the money. Kravis stated that he no longer wanted him involved in the case, and that if Cole, who had no right to any fee, would agree to forgo any attempt to obtain additional remuneration, he would not make an issue of it. Cole refused and in November 1970 Kravis wrote Cole formally discharging him from the case and threatening to complain to the courts, the bar association, and the newspapers if Cole continued to claim 50% of the total attorneys' fees. The record indicates that a second settlement was subsequently reached with other defendants for $15,000; and a judg-

ment was entered against another defendant for $315,000. Kravis then engaged present counsel to file a motion pursuant to Rule 14.23(g) of the circuit court of Cook County.

Kravis maintains that Cole breached his fiduciary relationship by not informing him of the "fee-splitting" arrangements with Kennelly and with Kotin. The appellate court relied primarily upon Cole's failure to disclose his arrangement with Kennelly in reaching its decision that Cole was entitled to reimbursement only for the value of services actually rendered. Cole asserts that the appellate court erred in that the nondisclosure of the Kennelly fee arrangement was not a theory raised in the trial court. Cole maintains that the entire thrust of Kravis's pleadings was that he had never become Kravis's lawyer, and that only as a minor contention did Kravis raise the issue of nondisclosure, and then only in relation to the Kotin arrangement. The appellate court noted that there was a reversal of "emphasis" in Kravis's argument before that court, and that Kravis subordinated, if not abandoned, his contention as to the absence of an attorney-client relationship and placed greater import on the alleged breach of a fiduciary duty. 15 Ill. App. 3d at 498-99.

It has frequently been held that the theory upon which a case is tried in the lower court cannot be changed on review, and that an issue not presented to or considered by the trial court cannot be raised for the first time on review. (*Woman's Athletic Club of Chicago v. Hulman,* 31 Ill.2d 449, 454; *Benson v. Isaacs,* 22 Ill.2d 606, 610.) A corrollary to this rule permits an appellee to defend a judgment on review by raising an issue not previously ruled upon by the trial court if the necessary factual basis for the determination of such point was contained in the record. (*Shaw v. Lorenz,* 42 Ill.2d 246, 248; *Hux v. Raben,* 38 Ill.2d 223, 225.) It is required that the points argued on appeal be commensurate with the issues presented at trial. *In Re Estate of Leichtenberg,* 7 Ill.2d 545, 548-49.

A detailed review of the record, including Kravis's motion, supporting affidavit, and memorandum in support thereof, clearly indicates that the theory upon which Kravis proceeded in the trial court was that Cole was never his attorney, and that there was no disclosure that Cole was to receive a share of the fee with Kotin. The references made to Kennelly's involvement were used only to supply background information. The portions of the record which Kravis refers to in his brief in support of his contention that the Kennelly matter was raised as an issue in the trial court belie his argument, for they specifically refer only to the Kotin arrangement. The undisputed facts show that Kravis was told by Cole of the original fee-division agreement with Kennelly at least five months prior to Kravis's filing his motion to determine the value of the legal services rendered. If the theory Kravis advanced in the trial court was to include the nondisclosure of the Kennelly arrangement, it could have been made quite explicit in his pleadings. It was not. While Cole's exhibits introduced the letter from Kennelly to Cole requesting a larger share of the fees to remain in the case, Kravis did not argue in the trial court that this was a basis for a denial of attorney's fees for Cole in the subsequent agreement with Kotin.

Moreover, to permit a change of theory on review "would not only greatly prejudice the opposing party but would also weaken our system of appellate jurisdiction." (*In re Estate of Leichtenberg,* 7 Ill.2d 545, 548-549.) Cole presented arguments against Kravis's motion based upon the issues raised therein and not upon issues Kravis would attempt to raise on review. Had the thrust of Kravis's theory advanced in the trial court been directed to the alleged breach of a fiduciary duty by Cole involving his arrangement with Kennelly, the possibility exists that the latter may have been called to testify as to his recollection of the conversation at their first meeting and any subsequent developments involving Kravis's knowledge of

a fee division. While the amount of prejudice suffered by Cole in this regard is speculative, it is apparent that Cole may have been prejudiced. We therefore conclude that the appellate court improperly considered the Kennelly arrangement.

The only issues properly before the appellate court were whether Cole was Kravis's attorney and whether there was a breach of fiduciary duty by a failure to disclose the Cole-Kotin arrangement. That court affirmed the trial court's judgment that Cole was Kravis's attorney, and that determination is not now disputed.

In the present case, Cole and Kravis had no fee arrangement at the commencement of their relationship. However, with the introduction of Kotin into the case a written contract was entered into by the parties which provided for the payment of a fee to Cole. Kravis was present in Kotin's office while Kotin dictated the contract in which Kravis agreed to pay Kotin and Cole the "statutory fee," which all parties agree meant 25% of the recoveries resulting from settlements and 33 1/3% of the recoveries resulting from trials. Kravis signed the contract, and from its language he knew or should have known that Cole would participate in the division of the fee. We find Kravis's testimony incredible that the reason Cole was included within the terms of the contract was because it would enhance his professional reputation to be connected with a case which might involve a large settlement or judgment, particularly in view of the fact that Kravis initially maintained that Cole was not his attorney. Moreover, Kravis approved and signed the petition for distribution following the first settlement recovery which included the payment to Cole. Kravis was aware that Cole had expended time and money in handling Kravis's legal matters following the accident in 1966 and prior to the retention of Kotin, and Kravis should have known that Cole expected to be paid for these services. While he may not have been aware of the exact division of the fee

between Kotin and Cole, he knew it would be divided as the trial court concluded.

Kravis does not now contend that the contingent fee was unreasonable or that the recoveries received could have been more favorable. Specifically, the record reflects that the trial judge, who presided over eight days of negotiations, stated that no greater recovery could have been secured. Kravis has failed to make any showing of possible prejudice regarding any recovery in this case. Kravis's sole complaint is that Cole is to receive a division of the fee. A fair reading of the record reveals a sophisticated man, a college graduate and an accountant, accepting services and entering into a contract and then attempting to avoid the responsibilities of those actions.

The trial judge found that Kravis was fully informed and advised of all material matters relating to the attorney-client relationship, and that all controverted issues of fact were in favor of Cole and against Kravis. Since that finding is not contrary to the manifest weight of the evidence, it will not be disturbed. *Turner v. Board of Education,* 54 Ill.2d 68, 73; *Schulenburg v. Signatrol, Inc.,* 37 Ill.2d 352, 356.

Accordingly, the judgment of the appellate court holding that Cole is not entitled to remuneration under the Kravis-Cole-Kotin contract is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. CHIEF JUSTICE UNDERWOOD, dissenting:

The court avoids considering the effect of Cole's undisputed concealment from his client of the real reason for attorney Kennelly's withdrawal from the case by saying that the issue was not raised in the trial court. In so holding the majority has overlooked the fact that the second point in the memorandum accompanying Kravis's trial court motion to determine the value of Kotin's and

Cole's legal services urged that Cole be denied compensation "Because of Mr. Cole's Breach of His Fiduciary Duty of Full Disclosure." While it is true, as the appellate court opinion notes, that the major emphasis in the trial court was on the absence of an attorney-client relationship, it cannot, in my judgment, fairly be said that the issue of a breach of fiduciary duty has been waived.

It is entirely clear that at the time attorney Kennelly withdrew from the case Cole did not inform his client that the withdrawal was caused by Cole's insistence that he (Cole) should receive at least one half of any fee collected. I simply do not believe this court should permit Cole to recover on a subsequent contract in view of his breach of his fiduciary duty by concealing the real reason for abrogation of the original agreement with Kennelly.

I do not agree that permitting recovery on a *quantum meruit* basis is appropriate, and I would affirm the appellate court.

MR. JUSTICE SCHAEFER joins in this dissent.