SCR MEDICAL TRANSPORTATION SERVICES, INC., Plaintiff-Appellant, v. AISHA BROWNE, Defendant-Appellant (Empire Fire and Marine Insurance Company *et al.*, Defendants-Appellees).

First District (3rd Division)   Nos. 1—01—0645, 1—01—0965 cons.

Opinion filed November 27, 2002.—Rehearing denied December 23, 2002.

586

HOFFMAN, J., dissenting.

Lee Pulliam and Bradley Daniel Birge, both of Pulliam & Birge, of Chicago, for appellant SCR Medical Transportation Services, Inc.

Larry R. Rogers and Devon C. Bruce, both of Power, Rogers & Smith, P.C., of Chicago, for appellant Aisha Browne.

Darlene Strickland, of Moore & Maisel, of Chicago, for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

SCR Medical Transportation Services, Inc. (SCR), provides paramedical transportation services in medicar vans to disabled passengers. On July 14, 1995, Aisha Browne was a passenger in the SCR van. SCR's driver was Robert Britton, a convicted felon. This case arises from the events of that day, with Browne's claim that Britton sexually assaulted her in the van and in her home.

Browne sued SCR for money damages caused by the sexual assaults. That case is pending in the trial court. Of immediate concern is the declaratory judgment action SCR filed against Empire Fire and Marine Insurance Company and Empire Indemnity Insurance Company (Empire)—SCR's auto liability insurer—and Browne. The issue in the trial court was whether Empire owes SCR a duty to defend it against Browne's complaint. The trial court held it did not. We agree, despite SCR's last-ditch attempt to label Britton's conduct as negligence.

## FACTS

In her eight-count complaint against SCR, Browne alleged Robert Britton was transporting her from Michael Reese Hospital to her home on July 14, 1995. Britton was employed as a driver for SCR. Browne alleged Britton sexually assaulted her inside the van and then entered her home, where he sexually assaulted her a second time. In

the related criminal case, Britton, also known as Robert Vaughn, was convicted of the sexual assaults.

Counts I through VI of Browne's fifth amended complaint sought damages from SCR under theories of negligence, negligent hiring, assault, intentional infliction of emotional distress, and negligent supervision.[1] SCR then brought its declaratory judgment action, alleging Empire had a duty to defend and indemnify it in Browne's lawsuit.

Empire filed a motion for summary judgment, contending the automobile liability policy it issued to SCR provided no coverage and no duty to defend against the allegations in Browne's complaint. The policy section at issue states:

> "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' "

The trial court granted Empire's motion, and SCR filed a motion for reconsideration. While that motion was pending, Browne filed her sixth amended complaint, adding a count IX for negligence against SCR and Britton. Count IX alleged Britton was negligent in that he:

> "A. Failed to travel upon recognized streets using the most direct route possible;
>
> B. Operated the SCR medical transportation vehicle through and upon an unnamed alley;
>
> C. Failed to control his bodily movements so that he caused AISHA to be in fear of her personal safety, although he knew or should have known that his proximity to AISHA would have frightened and injured her;
>
> D. Failed to call her back-up support to assist AISHA with her disembarkation from SCR medical transportation vehicle, although he knew or should have known that his proximity to AISHA would have frightened and injured her;
>
> E. Negligently assessed the situation when he attempted to assist AISHA with her disembarkation from the SCR medical transportation vehicle, although he knew or should have known that his words or actions would have frightened and injured AISHA; and
>
> F. Was otherwise negligent in placing AISHA in a situation which reasonably caused her to experience strong anxiety and fear."

Count IX alleged as a result of Britton's negligent acts, Browne was "physically and psychologically injured, has endured and will in the future endure untold pain and suffering; and has been deprived of the enjoyment of life."

---

[1] Counts VII and VIII sought damages from Labor Leasing under theories of negligent hiring and negligent supervision. Labor Leasing is not a party to this appeal.

The trial court denied the motion to reconsider. SCR and Browne now appeal the trial court's order granting summary judgment in favor of Empire.

## DECISION

■ Summary judgment is appropriate where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, affidavits, and admissions on file show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000); *Sollami v. Eaton*, 201 Ill. 2d 1, 6-7, 772 N.E.2d 215 (2002). Our review of a grant of summary judgment is *de novo*. *Villarreal v. Village of Schaumburg*, 325 Ill. App. 3d 1157, 1160, 759 N.E.2d 76 (2001).

■ In determining whether an insurer has a duty to defend its insured, the court must look to the allegations in the underlying complaint and compare them to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08, 607 N.E.2d 1204 (1992). If the underlying complaint alleges facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991). An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. *Wilkin*, 144 Ill. 2d at 73. Moreover, if the underlying complaint alleges several theories of recovery against the insured, the duty to defend arises if only one such theory is within the potential coverage of the policy. *Wilkin*, 144 Ill. 2d at 73.

■ Counts I through VIII of Browne's underlying complaint, for sexual assaults committed on her by the driver of the medical transport vehicle, clearly do not fall within the coverage of the policy. The policy provides the damages must be caused by an "accident," "resulting from the ownership, maintenance, or use" of the covered vehicle.

In similar cases where injuries were caused by criminal assaults in and about a vehicle, but were not caused by the vehicle itself, courts have held the injuries did not arise out of the operation, maintenance, or "use" of a vehicle and were not covered under an automobile insurance policy. See *State Farm Fire & Casualty Co. v. Rosenberg*, 319 Ill. App. 3d 744, 750, 746 N.E.2d 35 (2001); *State Farm Mutual Automobile Insurance Co. v. Pfiel*, 304 Ill. App. 3d 831, 836-38, 710 N.E.2d 100

(1999); *Laycock v. American Family Mutual Insurance Co.*, 289 Ill. App. 3d 264, 269, 682 N.E.2d 382 (1997); *United States Fidelity & Guaranty Co. v. Jiffy Cab Co.*, 265 Ill. App. 3d 533, 539-42, 637 N.E.2d 1137 (1994).

A causal relation or nexus must exist between the accident or injury and the ownership, use, or maintenance of the vehicle in order for the accident or injury to come within the policy coverage. *Pfiel*, 304 Ill. App. 3d at 836. We find there is an insufficient nexus between the operation, use, or maintenance of the SCR vehicle and Browne's injuries alleged in counts I through VIII to trigger a duty to defend under the terms of the insurance policy.

Browne contends SCR's special duty as a common carrier to transport and deliver disabled passengers safely to their destinations brought her injuries within the "use" of the vehicle. We considered and rejected a similar argument in *Jiffy Cab*, 265 Ill. App. 3d at 540-41. We held the taxicab's common carrier status was irrelevant where the cab driver stabbed a passenger during an argument. We similarly reject Browne's argument and find her injuries from the sexual assaults did not arise out of the use, operation, or maintenance of the vehicle.

Count IX was rushed into the breach when it became obvious the first eight counts of Browne's complaint would not support a duty to defend. The trial court had made it clear it was finding for the insurance company. Summary judgment had been entered for SCR. Obviously, it would be in Browne's interest to have SCR covered by Empire.

Count IX, part of Browne's sixth amended complaint, carves out Britton's conduct during the harrowing car ride that preceded the assaults and dumps it into the count, dressing it up with "negligent" labels. The count alleged Britton negligently operated SCR's van by driving the vehicle past Browne's home and down an unmarked alley, causing her to experience anxiety and fear, thereby causing her injury. We conclude the count is a device without substance.

When read in conjunction with counts I through VIII, it is clear Browne's alleged injuries were caused not by the way Britton drove the vehicle, but by the sexual assaults. The reason the driver drove down an unmarked alley behind Browne's house was to commit the criminal sexual assaults. The mere fact that a vehicle is the site of an injury or incident is insufficient to create a connection between the "use" of the vehicle and the injury so as to bring the injury within policy coverage. *Pfiel*, 304 Ill. App. 3d at 838.

SCR and Browne contend we should consider count IX in isolation from the preceding counts because it is possible Browne will drop the other counts and proceed to trial on count IX alone. We are not required to read count IX as if the other counts do not exist.

Where a party has pleaded separate counts against various defendants but has not pleaded in the alternative, "there is no rule which requires the court to consider each count in isolation and ignore facts pleaded in other counts." *Illinois Casualty Co. v. Turpen*, 84 Ill. App. 3d 288, 293, 405 N.E.2d 4 (1980) (all counts could be considered in determining whether insurer had duty to defend).

When deciding whether an insurance company had a duty to defend its insured in *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 136-37, 761 N.E.2d 1214 (2001), we did not separately analyze each count of the two complaints. Rather, we "consider[ed] all the facts alleged in both complaints in a *single analysis* of the duty to defend question" and "perform[ed] a *textual exegesis* on the complaints to determine whether their factual allegations trigger[ed] the insurance companies' duty to defend." (Emphasis added.) *Lexmark*, 327 Ill. App. 3d at 136-37. In so doing, we gave "little weight to the legal label that characterizes the underlying allegations." *Lexmark*, 327 Ill. App. 3d at 135-36.

In Browne's complaint, there are separate counts alleging separate claims against three separate defendants—SCR, Britton, and Labor Leasing, Inc. Therefore, we may consider count IX in light of the complaint as a whole and need not ignore the rest of the complaint. Putting labels aside, we find count IX does not allege a negligence claim. It alleges intentional conduct that does not trigger a duty to defend.

SCR relies on *Przybylski v. Yellow Cab Co.*, 6 Ill. App. 3d 243, 247, 285 N.E.2d 506 (1972), in which the 13-year-old plaintiff jumped out of a cab that was taking an unfamiliar route to her destination and injured herself on some railroad tracks. The reviewing court held the question of proximate cause with respect to the cab driver's actions was properly submitted to the jury. This case is distinguishable; *Przybylski* did not concern any insurance policy issues or the interpretation of an insurance contract.

This court has said, "tort liability on the part of the insured establishes contractual liability on the part of the insurer only where the policy affords coverage, and that determination is subject to the rules of contract construction, and not tort principles." *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 725, 648 N.E.2d 1099 (1995).

Our analysis is concerned solely with whether the insurance policy at issue provides coverage for SCR in defending the underlying lawsuit. We do not look to negligence cases in assessing Empire's duty to defend. Rather, we look only at the relevant insurance policy provisions and compare them to the allegations in the underlying complaint. *Outboard Marine*, 154 Ill. 2d at 107-08.

SCR and Browne also contend the trial court erred by prematurely determining the disputed question of negligent versus intentional conduct, a controlling issue in the underlying tort action. In response, Empire contends the trial court's decision to grant it summary judgment did not depend on whether Britton's conduct was intentional or negligent. In determining whether an insured's conduct is covered under a policy, a court must not determine disputed issues of fact which form the basis for the insured's liability in the underlying tort action. *Pfiel*, 304 Ill. App. 3d at 834.

In a declaratory judgment action, the construction of an automobile insurance policy's language is an issue of law, independent of the ultimate issues to be resolved in the underlying tort action. *Pfiel*, 304 Ill. App. 3d at 834-35; *Jiffy Cab*, 265 Ill. App. 3d at 537-38. We agree with Empire that the trial court's grant of summary judgment did not improperly resolve contested issues in the underlying tort litigation. There is no evidence in the record that the court did more than properly find the insurance policy at issue did not provide a duty to defend SCR in the underlying complaint.

Even if we were to consider count IX as a separate cause of action, it does not trigger Empire's duty to defend because Browne does not allege a "bodily injury," as required in the insurance policy. Count IX alleges she suffered "strong anxiety and fear" as a result of the driver's actions. Although the prayer for relief in count IX alleges she was "physically and psychologically injured," there are no specific allegations of any physical injuries. Our conclusion is buttressed by comments made by Browne's attorney during oral argument. He spoke of Browne being "scared when she was taken by her house" and of Britton's conduct "exciting a brain-damaged woman with cerebral palsy." He was asked: "What was the physical injury?" His answer: "Primarily mental anguish and psychological suffering." The clear meaning of that answer, when taken with the question that was asked, is that there was no "bodily injury" alleged, as that term is used in the insurance policy.

The insurance policy requires that the insured suffer a "bodily injury" resulting from an "accident" arising out of the "use, operation, or maintenance of the vehicle." "Bodily injury" is defined in the policy as "bodily injury, sickness or disease sustained by a person including death resulting from any of these."

In construing an insurance policy, the main objective is to ascertain and enforce the intentions of the parties as expressed in the agreement. *Laycock*, 289 Ill. App. 3d at 267. If the provisions of a policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. *Wilkin*, 144 Ill. 2d at 74; *Rosenberg*, 319 Ill. App. 3d

at 746. A provision is ambiguous if it is subject to more than one reasonable interpretation. *Wilkin*, 144 Ill. 2d at 74. Doubts and ambiguities will be construed in favor of the insured and against the insurer who drafted the policy. *Outboard Marine*, 154 Ill. 2d at 108-09.

In other duty-to-defend cases, this court has held where a policy defines "bodily injury" as "bodily injury," and not just "injury," the definition is restricted to actual physical injury. See *University of Illinois v. Continental Casualty Co.*, 234 Ill. App. 3d 340, 362, 599 N.E.2d 1338 (1992) (restricting term "bodily injury" in insurance policy to "actual physical injury," as opposed to broadening it to include mental anguish and mental distress), citing *Creamer v. State Farm Mutual Automobile Insurance Co.*, 161 Ill. App. 3d 223, 224, 514 N.E.2d 214 (1987) ("bodily injury" defined as "bodily injury to a person"); *Giardino v. Fierke*, 160 Ill. App. 3d 648, 654, 513 N.E.2d 1168 (1987) (" 'Bodily injury' means bodily injury to any person"). In cases where "bodily injury" is not defined in the policy, this court has looked to dictionary definitions to find the term's plain and ordinary meaning. See *Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 74, 739 N.E.2d 85 (2000) (quoting Black's Law Dictionary definition of "bodily injury": " 'Generally refers only to injury to the body, or to sickness or disease contracted by the injured as a result of injury ***.' Black's Law Dictionary 175 (6th ed. 1990)").

We find the definition of "bodily injury" in the insurance policy is not ambiguous and by its clear terms defines "bodily injury" as actual physical injury. Browne concedes count IX alleges no physical injuries, only fear and anxiety. The trial court correctly decided count IX did not fall within insurance policy coverage because the allegations do not come within the meaning of the policy.

## CONCLUSION

We affirm the decision and rulings of the trial court.

Affirmed.

SOUTH, P.J., concurs.

JUSTICE HOFFMAN, dissenting:

I agree with the majority's conclusion that counts I through VIII of Aisha Browne's underlying complaint do not allege facts which bring that case within, or even potentially within, the coverage afforded to SCR Medical Transportation Services, Inc. (SCR), under the policy of insurance issued by Empire Fire and Marine Insurance Company (Empire). The policy at issue provides coverage to SCR for

"bodily injury" and "property damage" caused by an accident resulting from "the ownership, maintenance or use" of a covered automobile. Counts I through VIII of Browne's underlying complaint allege causes of action for damages sustained when she was sexually assaulted by Robert Britton, the driver of an SCR vehicle in which she was a passenger. As the majority holds, there is an insufficient nexus between the operation, use, or maintenance of SCR's vehicle and the cause of Browne's injuries as alleged in counts I through VIII of her complaint to trigger a duty to defend under the terms of Empire's policy of insurance. See *United States Fidelity & Guaranty Co. v. Jiffy Cab Co.,* 265 Ill. App. 3d 533, 637 N.E.2d 1167 (1994). My disagreement with the majority is based on its holding that the allegations set forth in count IX of Browne's sixth amended complaint do not fall within the coverage of Empire's policy and, thus, do not give rise to a duty on the part of Empire to defend SCR in Browne's underlying action.

The majority has accurately set forth the charging allegations that appear in count IX of Browne's sixth amended complaint and the fact that she asserted that, as a proximate result of one or more of the negligent acts alleged therein, she was "physically and psychologically injured." It is important to note that there is no reference in count IX to the fact that Britton sexually assaulted Browne. Nevertheless, by reading count IX in conjunction with counts I through VIII, the majority concludes that Empire has no duty to defend SCR, finding that Browne's injuries were actually caused by her having been sexually assaulted by Britton.

The majority speculates that "[c]ount IX was rushed into the breach when it became obvious the first eight counts of Browne's complaint would not support a duty to defend." 335 Ill. App. 3d at 589. One might very well hold such an opinion as to Browne's motive for filing count IX, but her motive is totally irrelevant to the issue to be determined in this case. The question before this court is not why Browne amended her underlying complaint to include count IX or whether the allegation that she was "physically" injured as a result of Britton's alleged negligent conduct is true. Rather, the issue in this case is whether the allegations in Browne's underlying complaint potentially fall within the coverage provided to SCR under Empire's policy. As our supreme court held in *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.,* 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991):

> "To determine an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. [Citation.] An

insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. [Citation.] Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. [Citation.]" (Emphasis in original.)

In count IX of her sixth amended complaint, Browne has alleged "physical" injury proximately caused by Britton's operation of SCR's vehicle and by the manner in which he assisted in her "disembarkation" from the vehicle. Unlike the majority, I believe that she has thus asserted a theory of recovery which is separate and apart from the allegations of sexual assault set forth in counts I through VIII and which potentially falls within the coverage provided by the insurance policy Empire issued.

The majority asserts that it is not required to read count IX as if the other counts do not exist and, as a consequence of the facts alleged in counts I through VIII, concludes that count IX alleges intentional conduct which does not trigger Empire's duty to defend. I have found no authority for the proposition that, in determining an insurance carrier's duty to defend its insured, a court is at liberty to ignore one theory of liability alleged in the underlying complaint because it may be inconsistent with other theories of liability also alleged therein. To be sure, courts must consider all of the facts alleged in an underlying complaint in determining whether an insurance carrier has a duty to defend, but only for the purpose of ascertaining whether those facts allege even a single theory of liability that falls within the potential coverage of the policy. See *United States Fidelity & Guaranty Co.*, 144 Ill. 2d at 73.

Next, despite Browne's allegation in count IX that she was "physically" injured, the majority has determined that "Browne does not allege a 'bodily injury,' as required in the insurance policy." 335 Ill. App. 3d at 591. The majority supports its conclusion in this regard, in part, by noting that there are "no specific allegations of any physical injuries" set forth in count IX. 335 Ill. App. 3d at 591. However, the majority cites no authority for the proposition that a court will not consider a factual conclusion in determining whether an underlying complaint triggers the duty of an insurance carrier to defend its insured. To the contrary, our supreme court has on several occasions held that the allegations contained in an underlying complaint must be "liberally construed in favor of the insured." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125, 607 N.E.2d 1204 (1992); *United States Fidelity & Guaranty Co.*, 144 Ill. 2d at 74.

In further support of its conclusion that count IX fails to allege "bodily injury" and, as a consequence, facts which bring Browne's underlying complaint potentially within the coverage afforded under Empire's policy, the majority implies that Browne's attorney conceded her injuries in count IX amounted to mental anguish and fear. Further on in its opinion, the majority states that "Browne concedes count IX alleges no physical injuries, only fear and anxiety." 335 Ill. App. 3d at 592. I take issue with both the majority's reliance upon the statements of Browne's attorney at oral argument to support its conclusion and its interpretation of those statements.

First, I believe it is inappropriate to consider any extrinsic evidence which impacts on an ultimate fact upon which recovery in the underlying complaint is predicated. See *Thornton v. Paul*, 74 Ill. 2d 132, 157-59, 384 N.E.2d 335 (1978); *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 197, 355 N.E.2d 24 (1976). Empire's duty to defend should be determined by the allegations in Browne's underlying complaint, not by a statement made by her attorney in oral argument before this court. Second, the majority's statement that Browne's attorney conceded that the injuries for which she seeks recovery in count IX amount to mental anguish and fear is a bit of an overstatement. As the majority notes, in response to a question during oral argument relating to the allegation of physical injury in count IX, Browne's attorney responded: "I think it is *primarily* mental anguish and psychological suffering." (Emphasis added.) "Primarily" is not a synonym for "exclusively." Rather, "primarily" means "for the most part." Merriam-Webster's Collegiate Dictionary 925 (1998). It does not mean in the entirety. Therefore, even if one were to consider the statement made by Browne's attorney at oral argument, I do not believe that it constitutes the unqualified concession that the majority makes it out to be.

Although the trial court correctly granted summary judgment in favor of the defendants in the first instance, once Browne filed her sixth amended complaint including count IX, I believe that the trial court erred in denying SCR's motion for reconsideration. As a consequence, I would reverse the judgment of the trial court and remand the matter for further proceedings.